IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | : | No. 1:25cr91 |
| | : | (Judge Munley) |
| v. | : | |
| DAVID GLADDEN, Defendant | : | |

# MEMORANDUM ORDER

On March 26, 2026, David Gladden was indicted on eight counts of drug and firearm related offenses. (Doc. 1). Before the court are two motions to suppress, (Docs. 35, 37), and one motion to sever the counts, (Doc. 39). The court held an evidentiary hearing on these matters on August 17, 2026. Also before the court is Gladden's motion to deem document 35 unopposed pursuant to Local Rule 7.6. (Doc. 68). For the reasons stated below, all motions will be denied. The court addresses each motion in turn.

## I. Motion to Suppress Results of Search Warrant / Motion to Deem Unopposed

Counts 6, 7, and 8 of the indictment relate to "controlled substances, a cell phone, cash, and a firearm," seized from an apartment occupied by defendant at 1410 State Street in Harrisburg, Pennsylvania on July 30, 2024. (Doc. 35 ¶¶ 4, 6; Doc. 36 at 6). Gladden argues the warrant authorizing that search and seizure

did not "meet the particularity requirement of the Fourth Amendment [because] it fail[ed] to specify what apartment was authorized for search." (Doc. 35 ¶ 7). Rather, the "state judge issued the warrant for the entirety of 1410 State Street . . . [which] contains two apartments." Id. ¶ 6. The government argues that Detective Paul, the applicant, determined that the building in question had a front door common to both apartments, but rear doors that only led to specific apartments. (Doc. 46 at 4–5, 7–9). And because the warrant authorized a search tied to the red, rear door from which Gladden was operating, the warrant specified Gladden's apartment as the place to be searched. Id.

The Fourth Amendment requires a search warrant to particularly describe the place to be searched. United States v. Rosario, 180 F.4th 512, 522 (3d Cir. 2026) (citing U.S. CONST. amend. IV). A warrant is sufficiently particular "if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975) (quoting Steele v. United States No. 1, 267 U.S. 498, 503 (1925)). "[A] search warrant directed against an apartment house will usually be held invalid if it fails to describe the particular apartment to be searched with sufficient definiteness to preclude a search of other units located in the building." Id. at 654–55. "The standard is one of practical accuracy rather than technical nicety." Id. at 655 (citation omitted).

The affidavit seeking the warrant at issue here detailed Detective Paul's observation that the front door to Gladden's apartment building led to a common hallway shared by two apartments. (Doc. 50 at 2). Detective Paul described how, despite that common front approach, no common door exited to the rear of the building. Id. He credibly testified at the evidentiary hearing his conclusion that any door entering the building from the rear would necessarily be an entrance to only one apartment. (Doc. 66 at 67:16—68:1). And with the assistance of a drone, officers were able to pinpoint from which door defendant exited during a controlled buy. Id. at 68:7–25. The officers concluded "there [was] no other place that Gladden could have come from." Id. at 68:23–24. That place was the apartment behind the "rear red door with white trim," which, "when looking at [the] rear of [the] property," was "the door to the right." (Doc. 50 at 1). That specific description was the premises to be searched in the warrant. So, it was not a general warrant for the entire building, but a warrant specifically authorizing the search of the apartment behind that door.

Gladden alternatively argues, in his reply brief, that the warrant may authorize a search of the door itself, but nothing else. (Doc. 56 at 3). That argument is not well-taken. Warrants may be read practically, and with common sense. Doe v. Groody, 361 F.3d 232, 239 (3d Cir. 2004). A reader here would understand that the search for crack cocaine, drug paraphernalia, and drug

proceeds at 1410 State Street would be conducted in the apartment behind the door specified, not by dismantling the door.

Also in his reply brief, Gladden argues that under Franks v. Delaware,[1] the fruits of the warrant should be suppressed because "[t]he affidavit of probable cause withheld the existence of the second rear red door with white trim and falsely stated (or at least implied) there to be only one such door, precluding probable cause as [to] the area behind either door." (Doc. 56 at 6).

This argument confounds the court, as the warrant specifies that the door to be searched is "the door to the right," (Doc. 50 at 1), and Gladden acknowledges that the second door he mentions is on the left. (Doc. 56 at 9). So, no false statement was made and the argument fails.

Gladden moves for the motion to suppress to be deemed unopposed because the government did not file supplemental briefing[2] on the Franks argument following the evidentiary hearing. (Doc. 68). But Local Rule 7.6 mandates that a motion will be deemed unopposed if a brief in opposition is not filed. It does not mandate that an argument raised in a reply brief will be deemed unopposed under similar circumstances. Even if that were the case, the court

---

[1] 438 U.S. 154 (1978).

[2] The government filed an untimely supplemental brief on October 15, 2026. (Doc. 69; see Doc. 66 at 77:22—78:4 (court instructing "both sides" to file supplemental brief no later than thirty days after the filing of the transcript)).

remains obligated to consider the merit of a motion deemed unopposed in such a fashion. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991). And Gladden's Franks argument lacks merit. The motion to suppress at Doc. 35 and the motion to deem document 35 unopposed will be denied.

## II. Motion to Suppress Due to Invalid Consent to Search

Counts 2, 3, and 4 of the indictment "relate to a September 11, 2023 traffic stop by State Police in the city of Harrisburg." (Doc. 38 at 2). Gladden attempted to flee on foot following that stop but was apprehended after tripping. Id. He was told he was under arrest and Mirandized. Id. at 3. A few minutes later, police asked Gladden if they could search the vehicle, and he consented. Id. at 3. Gladden now moves to suppress the results of the search because, among other reasons, preceding his consent, an officer showed force and repeatedly threatened to tase him. Id. at 5–10. The government provides four reasons why the argument fails:

> First, the consent was valid. Second, the officers did not need consent under the automobile exception because they had probable cause there was evidence in the vehicle. Third, Gladden had no privacy interest in the vehicle after he abandoned it and fled on foot. Finally, the drugs would inevitably [have] been discovered during an inventory inspection of the vehicle.

(Doc. 47 at 4).

"[A] search authorized by consent is wholly valid." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). "When a prosecutor seeks to rely upon

consent to justify the lawfulness of a search, he has the burden of proving," by a preponderance of the evidence, "that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 549 (1968); United States v. Matlock, 415 U.S. 164, 177 (1974). Voluntariness is assessed based on the totality of the circumstances, "including the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual." United States v. Givan, 320 F.3d 452, 459 (3d Cir. 2003) (citing United States ex rel. Harris v. Hendricks, 423 F.2d 1096, 1099 (3d Cir. 1970)). Consent is invalid where it is "coerced, by explicit or implicit means, by implied threat or covert force." Schneckloth, 412 U.S. at 228.

At the evidentiary hearing, the government played the dashcam footage of defendant's arrest. (Ex. 9). The court observed and/or heard the following: Defendant initially failed to stop when Corporal Zoshak attempted to pull him over. Id. at 00:00–00:45. Defendant then refused to put the car in park when instructed by the officer in a Rite-Aid parking lot. Id. at 00:45—01:32. Defendant fled the parking lot, instigating a vehicular chase through the streets of Harrisburg. Id. at 2:10–23. Defendant then fled the car on foot and seconds later fell and was apprehended. Id. at 2:32–38. In the very brief period during which Corporal Zoshak was securing control of defendant, Zoshak used

aggressive and threatening language. Id. at 2:32—3:35. Once Zoshak secured control, the situation de-escalated completely. Id. at 3:35—4:00. Defendant was Mirandized, officers helped him up off of the ground, and friendly laughter could be heard in the audio. Id. at 4:00—5:48. It was during this relaxed period that defendant was asked for consent to search his vehicle, which he readily gave, after drugs were found on his person. Id. at 5:48—6:00. The court finds by a preponderance of the evidence that consent was freely given.

Gladden argues that his lack of a college education weighs against voluntariness. (Doc. 38 at 5). But Gladden does not explain, and this court does not understand why higher education would be necessary to understand the implications of consenting to a vehicular search.

Gladden argues he was not informed of his right to refuse the search. (Doc. 38 at 6). While "the absence of this type of warning" may favor Gladden, there is no rule "that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." United States v. Drayton, 536 U.S. 194, 206–07 (2002). Under the totality of the circumstances, the court finds Gladden's easy-going approach to providing consent, evident from the dashcam audio, overrides this concern.

Even if Gladden did not consent, the government argues that there was probable cause to search the vehicle because cocaine and marijuana were found

on his person and he admitted to officers that there were more drugs in the vehicle. (Doc. 47 at 10). The court agrees. "The automobile exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if 'probable cause exists to believe it contains contraband.'" United States v. Burton, 288 F.3d 91, 100 (3d Cir. 2002) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). Probable cause to search a vehicle exists when there is a "fair probability" that contraband or evidence of a crime will be found within. United States v. Donahue, 764 F.3d 293, 301 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Here, during the search incident to arrest, cocaine and marijuana were found on Gladden's person. This was enough to establish probable cause that more drugs would be found in the vehicle. See United States v. Johnson, 383 F.3d 538, 545 (7th Cir. 2004) (potential controlled substance falling out of hat of arrestee provided probable cause to search vehicle). But Gladden also told police officers that more drugs were inside his vehicle. (Ex. 9 at 5:40–6:30). Gladden argues that statement was the product of coercion. (Doc. 67 at 14). It was not. The court listened to the dashcam audio and Gladden readily volunteered the information. There was no pressure or coercion.

Because Gladden consented to the search of his vehicle, and because probable cause existed to search the vehicle even without consent, the court

need not consider the government's third and fourth arguments related to abandonment of the vehicle or the inevitable discovery doctrine. The motion to suppress due to invalid consent to search, (Doc. 37), will be denied.

## III. Motion for Relief from Improper Joinder and/or Severance of Counts

Finally, Gladden argues "[t]he four separate incidents alleged" in the indictment "are not of the same or similar character, nor the same act or transaction, and do not constitute parts of a common scheme or plan." (Doc. 39 ¶¶ 4, 6 (citing FED. R. CRIM. P. 8(a)). And so, Gladden argues the counts against him should be severed into four separate trials. Id. ¶ 6. The government argues the charges are similar in character because "[e]ach incident involved controlled substances and two also involve[ ] firearms." (Doc. 48 at 10). It further argues that the fact "the indictment . . . includes two counts of possession of a firearm in furtherance of drug trafficking demonstrat[es] the connection between the firearms and drug charges." Id. (citation modified). At the evidentiary hearing, Gladden argued that such similarities are "not enough for joinder." (Doc. 66 at 78:19–20).

But if those similarities do not place Gladden's indictment within the "wider latitude for joinder" provided by the "same or similar character" language of Rule 8(a), United States v. Eufrasio, 935 F.2d 553, 570 n.20 (3d Cir. 1991), the court is unsure what could qualify. Rule 8(a) distinguishes its "same or similar

character" language from other circumstances where joinder is proper, such as when acts are "based on the same act or transaction," or when they "are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). And so, joined offenses with the same or similar character need not be part of any identifiable sequence or shared event. Nor are they subject to temporal limitations. Rather, the common thread, per the plain language, is the offenses' "character." "Character" means "[a]n attribute or quality that serves as an indicium of the intrinsic or essential nature of something." BLACK'S LAW DICTIONARY (12th ed. 2024). So, joinder is proper when offenses have the same or similar essential nature. Gladden's charges possess a similar essential nature because all of Gladden's offenses are related to the drug trade. See United States v. Russell, 134 F.3d 171, 183 (3d Cir. 1998) ("guns are tools of the drug trade"). The offenses are properly joined.

The court is unpersuaded by Gladden's argument that even if joinder is proper, the court should sever his counts "because joinder is prejudicial to [his] ability to receive a fair trial." (Doc. 39 at 2). "The joinder of [a] defendant's offenses is consistent with the purpose of Fed. R. Crim. P. 8 to promote economy of judicial and prosecutorial resources." United States v. Gorecki, 813 F.2d 40, 42 (3d Cir. 1987) (citation omitted). Nevertheless, "[i]f the joinder of offenses . . . appears to prejudice a defendant . . . the court may order separate trials of

counts." FED. R. CRIM. P. 14(a). Gladden argues that a jury would "confuse, conflate, or cumulate the evidence and unfairly conclude [he] must be guilty of one set of counts because of strength of the evidence as to another set of counts." (Doc. 40 at 5). He further argues there is a "risk the jury takes the evidence of four separate incidents as evidence of criminal propensity." Id. But a limiting instruction that "instruct[s] the jury to consider the evidence of each crime separately" is all that is necessary "to cabin the risk of [such] prejudice." United States v. Livingston, Nos. 21-3213 & 21-3214, 2022 WL 16734500, at *2 (3d Cir. Nov. 7, 2022) (citing Zafiro v. United States, 506 U.S. 534, 538–39 (1993)). The motion to sever will be denied.

For the foregoing reasons, it is hereby **ORDERED** that:

1) Gladden's pretrial motion for suppression of results of search warrant, (Doc. 35), is **DENIED**;

2) Gladden's pretrial motion for suppression of physical evidence due to invalid consent to search, (Doc. 37), is **DENIED**;

3) Gladden's pretrial motion for relief from improper joinder and/or severance of counts, (Doc. 39), is **DENIED**;

4) Gladden's motion to deem document 35 unopposed pursuant to Local Rule 7.6, (Doc. 68), is **DENIED**; and

5) By way of separate order, this matter will be scheduled for trial.

Date: 10/16/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court